Leana McCLAIN, Plaintiff,

v.

NORTHWEST COMMUNITY CORRECTIONS CENTER, Judicial Corrections Board, et al., Defendant.

No. 3:00 CV 7648.

United States District Court,
N.D. Ohio,
Western Division.

June 15, 2004.

Catherine H. Killam, Arnold & Caruso, R. Michael Frank, Arnold & Caruso, Thomas A. Sobecki, Toledo, OH, for Lena McClain, Plaintiff.

Erin B. Moore, Jane M. Lynch, Green & Green, Dayton, OH, Thomas L. Czechowski, Chernesky, Heyman & Kress P.L.L., Dayton, OH, for Northwest Community Corrections Center Judicial Corrections Board, Northwest Community Corrections Center, James Wichtman, Rodney Fizer, Pamela Gunter–Fairhailey, Defendants.

## ORDER

CARR, District Judge.

This is an employment discrimination case in which the plaintiff has filed an motion for an interim award of attorneys' fees. For the reasons that follow, the motion shall be denied.

The background facts in this case have been set forth in previous orders. The facts relevant to the instant motion are repeated here.

Defendant North West Community Corrections Center, a multi-county corrections facility deemed to be an agency of the State of Ohio, hired plaintiff as a "Resident Specialist Coordinator." Pursuant to regulations adopted by the Center, plaintiff was required to completed a 120 day probationary period prior to being considered a permanent employee.. She did not complete that period, because she was fired due, in general terms, to allegations of incompatibility with the Center's treatment philosophy and some of her coworkers.

Thereafter, plaintiff brought this suit, contending, inter alia, that she had been denied procedural due process prior to her termination, and that considerations of her

race and gender motivated the decision to fire her.

I certified, inter alia, the following question to the Ohio Supreme Court:

Is an employee of a judicial corrections board hired to staff a community based correctional facility, who is subject to a 120 day initial review period pursuant to Board policy, entitled to "due process" in the termination of her employment pursuant to O.A.C. § 5120:1–14–03(P) and R.C. § 5120.111?

The Ohio Supreme Court, in *McClain v. Northwest Community Corrections Center*, 95 Ohio St.3d 484, 769 N.E.2d 387 (2002), answered affirmatively, holding that under Ohio law, plaintiff was entitled to due process prior to termination.[1] Based on that response, I concluded that, to conform with the Ohio Supreme Court's directive, "the plaintiff must be told why her termination is being considered, and, in turn given an opportunity to persuade the decision-maker that it is either acting on the basis of inaccurate or unreliable information, or, if the information is accurate and reliable, why she should be allowed to keep her job for the balance of the probationary period." *McClain v. Northwest Comm. Corr. Ctr.*, 268 F.Supp.2d 941, 943 (N.D.Ohio 2003).

Plaintiff then brought the instant motion for interim attorneys' fees, claiming to be a "prevailing party" as to her 42 U.S.C. § 1983 claim for a due process violation. However, I found there to be a preliminary question, which the parties had not previously addressed, which required resolution prior to adjudication of the merits of plaintiff's petition for interim fees: namely, whether the plaintiff, who had prevailed thus far only on her *state law* claim of

---

1. The Ohio Supreme Court declined to answer another question that I had certified: namely, whether "an employee of a judicial corrections board hired to the staff of a community based correctional facility an at-will employee who serves at the pleasure of the Board?"

entitlement to due process protection, is entitled to an award of fees under 42 U.S.C. § 1988.

To be able decide the motion, I directed the parties to submit supplemental briefing on the issue of whether plaintiff was an at will employee.[2] That briefing is now complete, and the motion for interim attorneys' fees is now decisional.

## STANDARD OF REVIEW

■ In some circumstances, an interim fee award may be granted before a final judgment has been entered. *See Hanrahan v. Hampton*, 446 U.S. 754, 758, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). An interim fee award is allowed "only when a party has prevailed on the merits of at least some of his claims ... only in that event has there been determination of the 'substantial rights of the parties.' " *Id.* (quoting legislative history).

In *Seals v. Quarterly County Court of Madison County, Tenn.*, 562 F.2d 390, 394 (6th Cir.1977), the Sixth Circuit held that a plaintiff who prevailed only a state law claim can recover fees under § 1988 where a companion federal claim, though not adjudicated, involved a "common nucleus of operative fact." If there is no common nucleus of operative fact, there would appear to be no basis for awarding fees under § 1988 to a plaintiff who has prevailed solely on a state law claim. *See National Org. for Women v. Operation Rescue*, 37 F.3d 646, 653–54 (D.C.Cir.1994) ("[A] plaintiff who loses on the merits of [her] federal civil rights claim is not a 'prevailing party' for purposes of an award of attorney's fees ... even if [she] prevails on a related pendent state law claim."); *Buero v. Trierweiler*, 616 F.Supp. 1414,

1416 (E.D.Mich.1985) (where jury ruled against plaintiffs on federal claim and in their favor on pendent state claim, plaintiffs not entitled to fees under § 1988); *Bass v. Spitz*, 522 F.Supp. 1343, 1356 (E.D.Mich.1981) (where plaintiff's liberty interest claim failed, he could not obtain § 1988 fee award on basis of favorable verdict on a pendent state claim); *see also* Alba Conte, *Attorney Fee Awards* § 3:4 (2d ed.) ("If the court rules in plaintiff's favor on a non-fee pendent state claim, but rules for defendant on the joined federal fee claim, courts have held that plaintiff is not entitled to a fee award under these circumstances.").

## DISCUSSION

### Plaintiff's Employment Status

■ The determinative issue in this case is whether the plaintiff was an at will employee. If so, she was not entitled to *federal* constitutional or statutory due process protection, *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 578, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and thus would not be entitled to an award of fees under § 1988, even though state law extended procedural due process rights to her. If not, i.e., if she had a property interest in her continued employment, she would be entitled to pre-termination due process under both federal and state law, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542–43, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), in which case there would be a "common nucleus of operative fact" between the federal and state claims, and she would be entitled to an award of fees under § 1988.

---

**2.** Specifically, I framed the issue as: whether § 5120:1–14–03(P) of the Ohio Administrative Code, providing due process for all employees, prevails over the defendant's policy manual, which creates the probationary period that plaintiff was not permitted to complete. Rather than addressing that particular question, the parties chose to address the broader question of whether she was an at will employee.

Plaintiff argues that, because O.A.C. § 5120:1–14–03(P) ("Regulation P"), as interpreted by the Ohio Supreme Court, operates as a statutory promise of pre-termination due process, she had a property interest in her job and was not an at will employee. Defendant counters by pointing out that Regulation P specifically states that employees of community based correctional facilities are "unclassified" (i.e., at will) employees, and that the law in Ohio is settled that unclassified employees do not have a property interest in their jobs.

■ "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interest that a person has already acquired in specific benefits." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). These property interests, however, "are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577, 92 S.Ct. 2701. Thus, in order to determine whether there is a property interest at stake, the court must look to state law.

In the instant case, Regulation P, the indisputably applicable provision of state law, clearly states that employees of community based correctional facilities (like defendant) are "unclassified" employees. In Ohio, unclassified public employees are at will employees, and serve at the pleasure of their department, unlike classified employees, who can only be removed for cause. As explained by the Sixth Circuit:

> There are critical differences between classified and unclassified civil servants.... Classified civil servants have tenure during good behavior and efficient service, can be discharged only for cause .... Unclassified civil servants, on the other hand, ... [s]erve at the pleasure of the [governing department or agency] ... [and] have no property right to continued employment. *Vodila v. Clelland,* 836 F.2d 231, 232 (6th Cir. 1987).

*Christophel v. Kukulinsky,* 61 F.3d 479, 482 (6th Cir.1995) (internal quotations omitted).

Conspicuously absent from Regulation P or any other law governing plaintiff's employment with defendant is any mention of removal only for cause. Such provision, if it existed, would support a finding that plaintiff had a property interest in her position.

The question, then, is whether the regulation's grant of "due process" somehow transformed plaintiff's employment status, so as to give her a property interest in her "unclassified" position. In an attempt to answer this question yes, plaintiff relies on two cases from the Sixth Circuit, *Mertik v. Blalock,* 983 F.2d 1353 (6th Cir.1993), and *Lucas v. Monroe County,* 203 F.3d 964 (6th Cir.2000).

*Mertik* involved contractual rights where an ice skating instructor taught at a city-owned rink. The Sixth Circuit determined that the instructor had a sufficient contractual basis for continuing her instruction to entitle her to protection under the Due Process Clause. *Mertik* did not, however, involve the intricacies of Ohio employment law, much less those of our State's public employment system. *Mertik* did not discuss what the contractual provisions at issue had to say about what standards the instructor had to meet to retain the benefits of the contract. Instead, the court simply said the plaintiff had met the standards, thereby implying that there were standards, which, in turn, would have been analogous to a "for cause" only termination.

The Sixth Circuit has, moreover, recently made clear, albeit in an unpublished opinion, that contract law does not override Ohio law applicable to public employees. *O'Hara v. Board of Educ. of the Brooklyn Sch. Dist.*, 72 Fed.Appx. 311, 313 (6th Cir.2003) (unpublished) ("Despite her contract, O'Hara's employment is governed by Ohio law applicable to public employees."). Thus, *Mertik* does not assist plaintiff.

*Lucas* involved removal of a wrecker service from a municipal stand-by tow list. The Sixth Circuit determined in *Lucas* that the absence of any legitimate claim to remaining on the list doomed the tow truck operator's due process argument, as there was no property interest at stake. In *Lucas*, the court distinguished another wrecker service case, *Gregg v. Lawson*, 732 F.Supp. 849 (E.D.Tenn.1989), in which the district court had found a property interest sufficient to implicate the Due Process Clause. In *Gregg*, however, the regulation enumerated specific standards applicable to wrecker services. These standards established a basis for finding cause for removing the wrecker service from the list. *Id.* at 853. Based, in part, on the inclusion of these standards in the regulation, the district court found a legitimate entitlement to (i.e., a property interest in) remaining on the list absent due process afforded to the plaintiff in removing him from the list. *Id.* at 853–54. No such standards were found in *Lucas*.

Neither *Lucas* nor *Gregg* were employment cases, much less with the statutory/regulatory structure for Ohio public employees. Neither case establishes what plaintiff needs to establish—that an unclassified, at will employee has a property interest in her position simply because she is entitled to statutory/regulatory due process prior to termination.

Far from supporting plaintiff's position, these cases, when viewed together, establish that, absent some enumeration of substantive standards which would serve as cause for removal/termination, a gratuitous grant of statutory due process protection does not create a property interest. In other words, these cases show that unless there is some provision which assures removal/termination only for cause, no property interest is implicated.

Plaintiff has not cited, and independent research has not uncovered, case law in the employment context holding that a property right existed in a position absent a "for cause" provision, even where pre-termination due process procedures were available. In the instant case there is no "for cause" provision; there is only a regulation providing for some sort of due process prior to termination. Thus, plaintiff did not have a property interest in her position.

Though the result in this case may seem, on the surface, anomalous, it is not. It does not require me to find Regulation P invalid, or to ignore the Ohio Supreme Court's determination, in its answer to the certified question, that plaintiff was entitled to some degree of due process before her termination. It may be unusual to say, on one hand, that plaintiff was entitled to due process prior to her termination, but was not, on the other hand, entitled to termination only in the event of cause. This result comes from the difference between a federal constitutional guarantee of due process, which arises where an employee has a property interest in her position, and a state law statutory grant of due process. Simply put, it is not enough for the plaintiff to show that she was entitled to some due process before losing her job; she had also to show, in order to be entitled to attorneys' fees, that she had an independent property interest that also would have been deserving of due process protection.

Thus, plaintiff has not prevailed, and cannot prevail, on her claim under the Fourteenth Amendment (via § 1983), because state law, while granting her a measure of pre-termination procedural protection, did not give her a substantive property right protecting her against termination only for cause. Plaintiff remained an unclassified employee, who, during the 120 day review period, served at the pleasure of her department, with no legitimate expectation of continued employment. While defendants did have to give her notice and an opportunity to be heard, they did not have to have cause for her termination.

Because plaintiff's employment with defendant was at will, her federal due process and state due process claims did not share a common nucleus of operative fact. Plaintiff is not entitled to attorneys' fees under § 1988, despite the fact that she prevailed on her pendent state law due process claim. *See National Org. for Women, supra,* 37 F.3d at 653–54 ("[A] plaintiff who loses on the merits of [her] federal civil rights claim is not a 'prevailing party' for purposes of an award of attorney's fees … even if [she] prevails on a related pendent state law claim."). Thus, I must deny her motion for an interim award of attorneys' fees.

### CONCLUSION

It is therefore

**ORDERED THAT** plaintiff's motion for interim attorneys' fees be, and hereby is, denied.

So ordered.